# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN BRIGHT, Plaintiff, v. JO ANNE B. BARNHART, Commissioner of Social Security, Defendant. | 1:04-cv-6122-SMS<br><br>DECISION AND ORDER DENYING PLAINTIFF'S SOCIAL SECURITY COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF MELVIN BRIGHT |

Plaintiff is proceeding in forma pauperis and with counsel against the Commissioner of Social Security. Plaintiff seeks judicial review of a final decision of the Commissioner denying an application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

[1] District Judge Anthony W. Ishii assigned the case to the undersigned Magistrate Judge on December 28, 2004.

which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge._

PRIOR PROCEEDINGS

On December 12, 2002, Plaintiff applied for Supplemental Security Income (SSI), alleging disability since May 17, 1968 (date of birth), or November 25, 2002, based on inability to read or write, hepatitis C, bone disease, and arthritis causing severe pain and inability to stand, sit or walk well or be on his feet longer than ten minutes. (A.R. at 58-72.) Plaintiff's claim was denied initially and on reconsideration. (Id. at 29-50.) Plaintiff requested a hearing before an administrative law judge (ALJ) of the Social Security Administration (SSA). On March 9, 2004, Plaintiff appeared with an attorney and testified before the ALJ. (A.R. at 16.) On April 14, 2004, the ALJ, Bert C. Hoffman, Jr., denied Plaintiff's application for benefits. (Id. at 16-22.) Plaintiff appealed the ALJ's decision to the Appeals Council. On June 14, 2004, the Appeals Council declined Plaintiff's request for review. (Id. at 5-8.)

On August 18, 2004, Plaintiff filed the complaint in the instant action; the administrative record was lodged by Defendant on December 16, 2004. On March 14, 2005, Plaintiff filed an opening brief. On April 15, 2005, Defendant filed a brief in opposition. On April 20, 2005, Plaintiff filed a reply brief.

ADMINISTRATIVE FINDINGS

The ALJ concluded that Plaintiff's subjective complaints were not totally credible; Plaintiff's illiteracy and low back pain were nonsevere impairments that did not cause more than minimal limitations on Plaintiff's ability to work. Although

Plaintiff had severe impairments of internal derangement of both knees with collapsing weakness of both lower extremities, flexion contracture of the elbows, and hepatitis C, the impairments did not meet or medically equal a listed impairment. Plaintiff retained the residual functional capacity (RFC) to lift and carry ten pounds frequently and occasionally; stand and walk at least two hours and sit six hours in an eight-hour workday; occasionally climb, balance and stoop, but never climb ladders, ropes and scaffolds, kneel, crouch, or crawl; and no forceful pushing, pulling, grasping, or twisting with the bilateral upper extremities. Plaintiff had no past relevant work, but as a younger individual between ages eighteen and forty-four, with a limited education and the RFC to perform a significant range of sedentary work, he could perform significant jobs in the national economy, such as assembler, 17,000 positions in California, and grader, 1,700 jobs in California. Accordingly, Plaintiff was not disabled. (A.R. 21-22.)

ISSUES PRESENTED

Reference to the briefs reveals that the following issues are presented for decision:

1) Whether the RFC was supported by substantial evidence, and specifically whether the opinions of consultative examiner Dr. Rios, and the state agency reviewing physician, relied on by the ALJ, actually supported a finding of disability; and

2) Whether at step five the vocational expert's (VE's) testimony concerned positions so generic that, in light of the fact that assembler and grader positions in the Dictionary of Occupational Titles (DOT) are light level positions, the evidence

fails to support a conclusion that Plaintiff could perform specific jobs existing in significant numbers because the record lacks a basis for resolving the conflict between the VE and the DOT.

FACTS

Neither brief contains a summary of the pertinent facts. Thus, both briefs violate the letter and spirit of the Court's scheduling order. Because Defendant expressly stipulates in her brief that the ALJ summarized the testimony, procedural history, and evidence accurately in the decision, and further because Plaintiff raises no issue concerning the accuracy of the record or the summary thereof in the ALJ's decision, the Court will refer only to the facts raised by the parties' specific arguments.

ANALYSIS

I. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially

on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual’s physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant’s past work; and 5) whether on the basis of the applicant’s age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[2]

II. Plaintiff’s RFC

[2] All references are to the 2004 version of the Code of Federal Regulations unless otherwise indicated.

Consulting internist Tomas Rios, M.D., examined Plaintiff on March 24, 2003, and observed that Plaintiff, who used no assistive device, was in moderate distress with obvious orthopedic anomalies, but he was well-developed and well-nourished; he walked with a limp but could tandem and toe-heel walk without any difficulties. Straight leg raising was accomplished at ninety degrees without any accompanying pain. Clinical examination revealed flexion contracture to both elbows and difficulties with pronation and supination of the upper extremities. There was some weakness to the right upper extremity and laxity of the shoulder joints without impingement syndrome. Examination of both knees revealed marked laxity of the joints and significant atrophy to the quadriceps muscles, greater on the right. Plaintiff's abdomen appeared normal and flat. There was no palpable organomegaly observed. Motor strength in the upper extremities was reduced at 4/5, right lower extremity was 3+/5, and left lower extremity was 4/5; however, there was noticeable preservation of the muscle bulk and tone, and grip strength bilaterally was strong and adequate. An x-ray of the right knee was normal and evinced no joint effusion, fracture, or dislocation. Joint spaces were well-maintained.

Dr. Rios diagnosed 1) internal derangement of both knees; 2) flexion contracture of the elbows; and 3) hepatitis C without any signs of significant liver compromise, and complaints only of myalgia and arthralgia. Plaintiff had collapsing weakness of the weight-bearing joints with noticeable laxity of the joints. Dr. Rios opined that Plaintiff could walk and stand no more than two hours in an eight-hour workday with rest intervals at least every

thirty minutes; no squatting, crouching, or crawling; and due to shoulder problems, Plaintiff would have difficulties with any forceful pushing and pulling. He would also have difficulty with grasping and twisting with the upper extremities. (A.R. 18, 99-103.)

The state agency physicians gave assessments dated April 15, 2003, and June 24, 2003, reviewing medical evidence through April 15, 2003. They opined that Plaintiff had the RFC to lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk two hours in an eight-hour workday and up to thirty minutes at a time; sit six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, and stoop; but never climb ladders, ropes and scaffolds, or kneel, crouch, or crawl; and no forceful pushing, pulling, grasping, or twisting with the bilateral upper extremities. Plaintiff had not sought any treatment for his ailments, taking only Advil for pain; there was no joint pathology; flexion contractures at the elbows were mild, with full flexion to 150 degrees and extension short nineteen degrees on one side and fifteen degrees on the other; and supination and pronation were measurably full at eight bilaterally. They noted Plaintiff's previously underproductive life;[3] they gave weight to the consultive examiner's opinion; and they stated that they suspected that Plaintiff was portraying himself as being more limited than he truly was. (A.R. 109-19.)

The ALJ also reviewed a report of Dr. Felizata dated March 18, 2003, regarding a clinical examination upon a referral by

[3] Plaintiff had no work history and had been in prison.

Plaintiff's Social Security lawyer, noting Plaintiff's complaints of knee, leg, and back pain. The exam revealed congenital deformity lower extremity instability and weakness at both knees, and enlarged elbows and knees bilaterally. Plaintiff had a history of intravenous drug use for sixteen years until 2003 as well as surgery on both knees when Plaintiff was eight with only a slight improvement of the condition. The assessment was hepatitis C and unnamed congenital bone disease. (A.R. 18, 105-08.)

The ALJ noted Plaintiff's subjective complaints of pain in his shoulders, limitations of his extremities, inability to stand longer than twenty-five minutes, lying down during the day to rest, and difficulty gripping with his left hand but use of his dominant right hand. (A.R. 19.) The ALJ further noted Plaintiff's testimony that he could lift twenty pounds, recent history of working for several months for eight hours a day and five days a week, less recent history of working in the prison laundry, and his testimony that at the time of the hearing he worked four hours per day and performed his job of receiving computer training. (A.R. 19.)

The ALJ concluded that Plaintiff's allegations were not as limiting as he alleged, relying in part on the medical evidence, and expressly noting that despite Plaintiff's derangement of knees and flexion contracture of the elbows, there was no evidence on x-ray or clinical exam of inability effectively to ambulate or manipulate; Dr. Rios had noted preserved muscle bulk and tone of the lower extremities; although there was a limp, no assistive device was used; and despite pronation and supination

difficulties with either arm, grip strength was strong and adequate bilaterally. The ALJ reasoned that Plaintiff used only modest pain medication, taking an over-the-counter nonsteroidal anti-inflammatory medication that was inconsistent with chronic, debilitating pain and that suggested no evidence of side-effects; he slept without difficulty; he had not received physical therapy or home exercise or any other significant pain therapies; no braces or supports were used; and surgery had not been recommended. Further, Plaintiff had normal activities of daily living with unspecified limitations, working as a maintenance worker for four hours and participating in vocational training for four hours per day, working in the laundry in prison, and making his bed and holding and feeding his infant child. (A.R. 19.) Further, no treating or examining physician had precluded work activity. (A.R. 20.)

The ALJ then stated:

> In accordance with Social Security Ruling 96-6p, substantial evidentiary weight is given the well-documented opinion of Dr. Rios, a Board-Certified Internist. The Court finds no conflict between Dr. Rios' limitation to standing and walking no more than two hours in an eight hour workday with rest intervals every thirty minutes and sedentary work activity. Similarly, the opinions of the State Agency physicians are also accorded substantial evidentiary weight, in combination with the testimony of the vocational expert.

(A.R. 20.) The ALJ then assigned the RFC that was compatible with Dr. Rios's limitations on standing and walking for two hours with rest periods and the preclusion of squatting, crouching, crawling, kneeling, climbing ladders and scaffolds, or forcefully pushing, pulling, grasping, or twisting with the bilateral upper extremities. (A.R. 20.) In concluding that Plaintiff could lift

and carry ten pounds frequently and occasionally, the ALJ was consistent with the state agency physicians' limit of ten pounds occasionally. However, the ALJ's RFC was also supported by Plaintiff's own testimony of a greater lifting capacity involving twenty pounds. The conclusion that Plaintiff could sit six hours in an eight-hour workday and occasionally climb, balance, and stoop was likewise consistent with the state agency physicians' conclusions. Plaintiff does not point out any additional medical evidence that is inconsistent with the ALJ's RFC.

The opinion of a nontreating but examining physician as well as that of a nontreating, non-examining physician constitute substantial evidence where, as here, they are based on clinical findings and are consistent with the record as a whole. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The Court concludes that the RFC was supported by substantial evidence.

II. Sufficiency of Vocational Expert's Testimony at Step Five

Plaintiff's counsel agreed to accept Mr. Ken Ferra as a VE. (A.R. 154.) The VE agreed that Plaintiff had no acquired work skills. When asked if there would be any light work left for a person who could otherwise do light work but could not make his arms turn outward from the elbow, the VE said cleaner positions would be compatible. A cleaner cleans office buildings, empties trash, and wipes things down doing what was described or demonstrated as an inward type of movement. The VE stated in pertinent part:

> A You're not going to find a lot of requirement for this type of movement. It would be this type of

movement.
Q All right. Inward as opposed to outward?
A Right.
Q Okay. What's the number on that?
A 20,000 in California.

(A.R. 155-56.)

The ALJ then dropped the RFC down to sedentary with the same difficulty with moving outward but not inward, and asked the VE if that would have any substantial impact on a sedentary base. The VE replied that it would not, that jobs would include 1700 assembler jobs in California, and 1,700 compatible grader positions (someone who would have to pick things off a line) in California. (A.R. 156.)

The ALJ then posed additional limitations, including no squatting, crouching, crawling; walking and carrying only two hours in an eight-hour period with walking or standing at rest intervals at least thirty minutes every thirty minutes; inability to perform forceful pushing or pulling; and marked difficulty with forceful grasping and twisting (which he referred to as being essentially Dr. Rios's RFC, with which counsel for Plaintiff concurred).

The VE testified that the sedentary occupations identified in the previous hypothetical would be compatible. (A.R. 157.) When asked by Plaintiff's counsel if sedentary workers get rest intervals every thirty minutes, the ALJ noted that as the hypothetical question had been posed, the rest limitation was applicable if there was standing and walking for two hours out of eight. (Id.) The VE confirmed that as he had understood the question, it was that if the position required two hours of walking out of eight, then there had to be rest every thirty

minutes. (Id.) If the worker required rest intervals or breaks every thirty minutes (i.e., apparently unaccompanied by standing or walking for two hours), then there would be no jobs. (A.R. 158.)

Plaintiff argues that the assembler and grader positions identified by the VE were generic, and thus it is impossible to determine what occupations, if any, the VE felt Plaintiff could perform. Plaintiff asserts that the DOT contains ten sedentary assembler occupations, but it is uncertain to which ones the VE referred; there are no sedentary grader occupations, but sixteen light grader occupations. Plaintiff argues that there are no data to support the VE's opinion, and the ALJ failed to explore and resolve the conflict between the VE and relevant vocational data. Thus, Defendant failed in its burden of proof at step five.

It is established that the Commissioner routinely relies on the DOT and Selected Characteristics in determining the skill level of past work or ability to perform other work. The Commissioner may rely on the general job categories of the DOT and Selected Characteristics as applicable to a claimant's prior work; see 20 C.F.R. §§ 416.966, 416.967; Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). However, the Commissioner may take administrative notice of any reliable job information, including the services of a vocational expert. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (quoting Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (6th Cir. 1994)). Introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the

job title is classified in the DOT. Id. It is established that the mere fact that jobs listed by the vocational expert as sedentary are also listed as "light" work in the DOT is irrelevant. Vocational experts routinely testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (citing Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995) and Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478 n. 1 (9th Cir. 1989)).

Thus, although the DOT classification of a job's level is presumptively valid, the presumption of validity may be rebutted by expert testimony that contradicts the DOT insofar as the record contains persuasive evidence to support the deviation. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (where although the claimant was restricted to sedentary work with non-exertional limitations, a finding of ability to perform jobs that were categorized as light work was sufficient where the record contained specific and persuasive expert testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements and characteristics of local positions in a designated occupation with the specific abilities and all relevant specific limitations of the claimant). The evidence sufficient to permit a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Admin., 119 F.3d 789, 793 (9th Cir. 1997) (holding that where job categories were inconsistent with impairments, and neither the ALJ nor the VE

explained the reason for departing from the DOT, the Court would reject the conclusion that jobs were available). It is the ALJ's obligation to inquire about and elicit a reasonable explanation for a conflict between the occupational evidence provided by a VE and that supplied by the DOT. S.S.R. 00-4p at 2.

Here, reference to the pertinent portion of the record reveals the adequacy and persuasiveness of the VE's testimony. First, it is clear from the questioning that it centered on Plaintiff's specific problems with his extremities and the requirements of specific jobs in light of those unique problems. (A.R. 155-57.) The VE responded in terms of types of positions, namely, assembler and grater positions in California, the local or regional economy. He specifically testified that the positions in question would be compatible with Plaintiff's abilities, and he described what was involved in the grading positions. He also testified to the number of positions. Plaintiff's counsel expressly accepted the VE's qualifications. Under the circumstances, the record as a whole supports the conclusion that the VE testified from his expertise with respect to the existence of specific assembler and grader positions in the California economy. His testimony constituted substantial evidence in support of the ALJ's findings.

As to the complaint that the VE's testimony was generic, it is true that the ALJ must take the testimony of a vocational expert to identify specific jobs within the claimant's capabilities. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). Polny v. Bowen, 864 F.2d 661 (9th Cir. 1988), cited by Plaintiff, does not contain any analysis of the specificity concept and

merely states the general rule of law that specific occupations must be identified. No authority is cited to the Court that would require a greater degree of specificity than that employed by the VE. The Court thus finds that the ALJ proceeded according to correct legal standards and that substantial evidence supported the ALJ's conclusion that Plaintiff could perform work that existed in significant numbers in the economy.

As to the number of positions, work which exists in the national economy means work which exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2); see 20 C.F.R. § 416.966. It has been held that as few as 1,200 positions regionally are sufficient in number. Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478- 79 (9th Cir.1989) (1,266 jobs significant gainful work).

Plaintiff makes a somewhat vague argument to the effect that the VE's opinion evidence was not sufficiently supported by factual basis, data, principles, methods, or the application thereof. Citing Kumho Tire Co. v. Carmichael, 526 U.S. at 148, which in turn cited Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, Plaintiff appears to be arguing an evidentiary principle. However, Plaintiff also concedes that the federal rules of evidence do not specifically apply to this proceeding.

The Court concludes that this is an appropriate occasion for the application of the principle that unless excusing compliance is necessary to avoid a manifest injustice, when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on

appeal to the courts. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This is because the ALJ, rather than this Court, is in the optimal position to resolve the any issues regarding evidence. See, id.

Because Plaintiff has not shown that she raised this evidentiary issue before the ALJ or Appeals Council, Plaintiff has waived her right to obtain judicial review of the issue here.

DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Melvin Bright.

IT IS SO ORDERED.

**Dated: February 22, 2006** **/s/ Sandra M. Snyder**
icido3 UNITED STATES MAGISTRATE JUDGE